Catherine Cabalo (Cal Bar No. 248198)
PEIFFER WOLF CARR KANE & CONWAY, APLC
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: 415.766.3592
Facsimile: 415.402.0058
Email: ccabalo@peifferwolf.com

*Attorneys for Plaintiffs*
*Abdul Nevarez and Priscilla Nevarez*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABDUL NEVAREZ and PRISCILLA NEVAREZ,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ALAMEDA and DOES 1-10, Inclusive,<br><br>Defendants. | Case No.<br><u>Civil Rights</u><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES**<br><br>1. Violations of Title II of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 et seq.)<br>2. Violation of the Rehabilitation Act of 1973 (29 U.S.C. § 794)<br>3. Violation of California Government Code Section 11135<br>4. Violations of the California Unruh Act (Cal. Civil Code § 51 *et seq.*)<br><br>**DEMAND FOR JURY TRIAL** |

COME NOW Plaintiffs Abdul Nevarez and Priscilla Nevarez (together "Plaintiffs") on behalf of themselves and all other similarly situated disabled persons in this civil rights action, and hereby complain of defendant City of Alameda and Does 1-10 as follows:

**INTRODUCTION**

1. This is a civil rights action involving the lack of disabled access to the golf programs and golf courses owned, operated, and/or leased by defendant City of Alameda (the "City"), including but not limited to the lack of disabled access to the building, structure, facility, complex, property, land,

development, and/or surrounding business complex known as "Corica Park Golf Course," located at or about 1 Clubhouse Memorial Road, Alameda, California 94502 (hereinafter "Corica Park"). Upon information and belief, the City is an owner, operator, lessor, and/or lessee of Corica Park.

2. Plaintiff Abdul Nevarez (sometimes "Mr. Nevarez") is physically disabled and requires the use of a wheelchair. Mr. Nevarez was an avid golfer prior to the injury that rendered him disabled. He has continued golfing to remain physically active after his injury, as it is one of the only recreational physical activities that he is able to enjoy regularly with his family and friends.

3. Plaintiff Priscilla Nevarez (sometimes "Ms. Nevarez") is Mr. Nevarez's wife. She accompanies Mr. Nevarez golfing and often assists with making arrangements for them to golf.

4. At all times relevant herein and continuing, Plaintiffs were denied equal protection of the law and were denied civil rights under state and federal law. As set forth in detail herein, Plaintiffs were denied rights to "full and equal" access at the City's golf courses and to the benefits of "programs, services and activities" offered by the City because the City's programs, services, and activities were not "accessible to and useable by" persons with disabilities, such as Mr. Nevarez, who requires use of accessible facilities. The denial continued despite the City having actual notice of the inaccessible conditions, demonstrating its deliberate indifference and/or intentional discrimination toward Plaintiffs. Plaintiffs seek injunctive relief to require the City to make its specified facilities accessible to disabled persons and to ensure that the "programs, services and activities" offered by the City be provided in a non-discriminatory manner to mobility disabled persons, including but not limited to removing all architectural barriers at Corica Park and all other golf courses that the City owns, operates, and/or leases.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction of this action pursuant to 28 USC § 1331 for violations of the ADA, 42 USC §§ 12101 *et seq*. Pursuant to supplemental jurisdiction, attendant and related causes of action arising from the same facts are also brought under the Unruh Civil Rights Act, California Civil Code §§ 51, 52.

6. Venue is proper in this court pursuant to 28 USC § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this District and that Plaintiffs' causes of action arose in this District.

7. This case should be assigned to the San Francisco/Oakland Division of the Northern District of California, as the real property which is the subject of this action is located in this intradistrict and Plaintiffs' causes of action arose in this intradistrict.

## PARTIES

8. At all times relevant to this Complaint, Mr. Nevarez is qualified as a "physically disabled person" and a "person with a disability," within the meaning of the ADA, the Rehabilitation Act of 1973, and Unruh Civil Rights Act ("Unruh Act"). Mr. Nevarez's right leg is amputated above the knee and he has significant nerve damage in his left leg and left arm. He requires use of a wheelchair for mobility. He possesses a disabled parking placard and/or license plate issued by the State of California, entitling him to park in designated accessible and van-accessible parking spaces.

9. Plaintiff Priscilla Nevarez does not have a disability, but she assisted Mr. Nevarez with and accompanied him to all the events described in this Complaint. Priscilla and Abdul are married.

10. The City and defendant Does 1-5 are public entities subject to Title II of the ADA, the Rehabilitation Act of 1973, and to all other legal requirements referred to in this Complaint, who are the owners, operators, lessors, and/or lessees of Corica Park. Defendant Does 6-10 are employees and/or agents of the City and/or Corica Park. The true names or capacities, whether individual, corporate, associate, or otherwise of defendant Does 1-10 are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names. Plaintiffs are informed and believe, and thereon allege, that each of the fictitiously named defendants is in some manner legally responsible for the events and happenings herein referred to, which caused injury and damages to Plaintiffs as herein alleged. Plaintiffs pray for leave of court to amend this Complaint to show such true names and capacities when the same have been ascertained.

11. Plaintiffs do not know the relative responsibilities of the City and Does 1-10 in the ownership and operation of the facilities herein complained of, but is informed and believes, and on

3
COMPLAINT

such information and belief alleges, that at all times mentioned herein, defendants, and each of them, were the agents, servants, employees, and representatives of each of the other defendants, and performed all acts and omissions stated herein within the scope of such agency or employment or representative capacity, and/or as part of a joint venture and common enterprise with one or more of the other defendants, and are responsible in some manner for the acts and omissions of the other defendants in proximately causing the damages complained of herein. All actions alleged herein were done with the knowledge, consent approval and ratification of each of the defendants herein, including their managing agents, owners, and representatives.

**FACTUAL ALLEGATIONS**

12. The City has discriminated against Plaintiffs because Corica Park's facilities and policies do not comply with the requirements of the ADA, Rehabilitation Act of 1973, California Government Code § 11135, and Unruh Civil Rights Act. The City has failed and refused to provide full and equal access to the services, privileges, benefits and advantages that it provides to nondisabled persons at Corica Park.

13. The City has discriminated against Plaintiffs by failing to remove numerous architectural barriers at Corica Park that prevent wheelchair users from golfing at the courses and utilizing the services offered in the buildings related to Corica Park.

14. The City has also discriminated against Plaintiffs by failing to abide by applicable federal and state access standards in constructing and/or altering facilities at Corica Park.

15. The City failed to make reasonable accommodations for Mr. Nevarez, even though doing so is feasible and readily achievable given the City's resources, and the City cannot demonstrate that making the requested accommodations would fundamentally alter the nature of the services, programs, or activities offered at Corica Park.

16. The City has knowingly and intentionally denied persons with mobility disabilities the full and equal enjoyment of its businesses, services, privileges, advantages, and accommodations. The City has engaged in this discriminatory conduct despite the fact that its services, business practices, contracts, and contractual relationships could easily be brought into compliance with the ADA,

Rehabilitation Act of 1973, California Government Code § 11135, and the Unruh Act, and despite the fact that the City is and has been fully aware that its conduct and business practices have and continue to cause harm to persons with mobility disabilities including segregation and exclusion. The foregoing violations of the ADA, Rehabilitation Act of 1973, California Government Code § 11135, and Unruh Act are illustrated by the experiences of Plaintiffs, which are set forth in the paragraphs below.

17. Plaintiffs have attempted to visit Corica Park as paying customers multiple times since early 2019, and they encountered barriers (both physical and intangible) that interfered with, if not outright denied, their ability to use and enjoy the goods, services, privileges and accommodations offered at Corica Park, including without limitation: parking, path of travel from parking to the Pro Shop and restaurant, Pro Shop, and restaurant.

18. Because Mr. Nevarez has struggled with numerous barriers every time he has visited Corica Park, Ms. Nevarez has been forced to assist Mr. Nevarez on each of their visits and has independently suffered injuries as a result of her association with Mr. Nevarez.

19. Plaintiffs went to Corica Park the morning of October 26, 2019 to hit balls at the driving range and possibly golf Corica Park's 9-hole course next to the driving range (aka "par-3 course" or "par-3 range"). They parked their truck close to the driving range. The striping of the accessible parking stalls in this area were faded and difficult to see, and there were no signs marking the accessible stalls. Plaintiffs parked in a stall with faded paint, unsure if they would be blocked in by another car parking too close and obstructing Mr. Nevarez from accessing the truck from his wheelchair.

20. When they were done golfing the 9-hole course, Plaintiffs decided to have lunch at the restaurant located by the main golf course. Mr. Nevarez transferred into his wheelchair and started to roll over to the restaurant while Ms. Nevarez drove their truck over to a parking space close to the restaurant. Mr. Nevarez rolled along the sidewalk adjacent to the driving range toward the restaurant. However, when he got to the end of the sidewalk, there was no curb cut and no accessible and safe path of travel for him to cross the parking lot get to the restaurant. He was forced to turn around and roll back until he found a curb cut to get off the sidewalk.

21. Once off of the sidewalk, he had to roll through the parking lot with holes, bumps, and loose gravel everywhere and vehicular traffic around him until he reached a curb cut near the main course and restaurant. The area near this curb cut and the curb cut itself had a lot of cracks, and he almost fell out of his wheelchair while trying to roll up the curb cut.

22. When Ms. Nevarez attempted to park the truck in a designated accessible stall near the restaurant while Mr. Nevarez rolled over to the restaurant, she noticed the paint was faded and stalls were not clearly marked or signed in this area of the parking lot either. She parked in what she could barely make out was a parking space and headed towards the restaurant to meet up with Mr. Nevarez. When she found him, he told her about his difficulties getting there -- that he almost fell on the way over to the restaurant. This situation was very upsetting for Plaintiffs.

23. Plaintiffs ordered food from the restaurant and ate outside. Once they finished eating, they headed towards their truck. However, there were no curb cuts nearest to their truck, just a dangerous piece of wood that someone had installed as a make-shift ramp. Plaintiffs turned around so that Mr. Nevarez could exit via the severely cracked area where he had almost fallen when he first got to the restaurant area from the driving range. To get to the truck, Mr. Nevarez rolled through the parking lot, which had many holes, bumps, and loose gravel everywhere in this area too. It was clear that the entire parking lot is old and in severe disrepair.

24. On November 2, 2019, Plaintiffs arrived at Corica Park to attend a golf clinic. When they arrived, they parked by the driving range in the same accessible space they parked in the last time that was faded and not clearly marked.

25. After the clinic/demonstration at the driving range, Plaintiffs and several people at the demonstration decided to eat at the restaurant. Ms. Nevarez drove the truck over to the restaurant while Mr. Nevarez rolled over with another wheelchair user who led the clinic/demonstration. Once again, Mr. Nevarez struggled with areas of asphalt in the parking lot that were difficult to roll over because the areas were in such disrepair. And when Mr. Nevarez tried to use a curb cut to get to the restaurant, he almost fell out of his wheelchair again due to all the cracks in the area.

26. Plaintiffs ordered food and ate outside. When they left, they exited through the far end of the main course to the parking lot next to the Pro Shop. That side of the parking lot and a curb cut on that side were also in extreme disrepair, full of cracks and dangerous for a wheelchair. Nonetheless, Mr. Nevarez did his best, with difficulty, to navigate his way through the parking lot to get to the truck.

27. On December 12, 2019, Plaintiffs picked up their son up from the Oakland International Airport. They decided to get breakfast at the restaurant at Corica Park, because it is close to the airport and they enjoy the food there. As with prior visits to Corica Park, they parked in a designated accessible parking space with faded paint. Based on their observations of the parking lot, the paint for all the parking stalls was faded -- none of the "accessible" stalls were properly marked or signed.

28. Plaintiffs parked and they entered to the left of the main course. Again, Mr. Nevarez was forced to navigate through areas of severe disrepair in the parking lot, since there are no accessible paths of travel or curb cuts in this area to get onto the sidewalk that leads to the restaurant. He navigated through the severely cracked area and up the same curb cut that he struggled with before. Plaintiffs and their son ate inside the restaurant, and upon exiting to the parking lot, Mr. Nevarez encountered the same issues trying to get from the restaurant to their truck in the parking lot.

29. On January 2, 2020, Plaintiffs were in the area and decided to get lunch at the restaurant at Corica Park. They arrived and struggled as usual to find a properly marked accessible stall in the parking lot. After parking in a stall with faded paint, they entered to the left of the main course, as they had on December 12, 2019. Mr. Nevarez encountered the same issues as before both trying to get from their parked truck to the restaurant and back to their truck after lunch.

30. On February 9, 2020, Plaintiffs and their son met friends for brunch at Corica Park. After parking, Plaintiffs and their son entered to the left of the main course, as they had on December 12, 2019 and January 2, 2020. Mr. Nevarez encountered the same issues as before trying to get from their parked truck to the restaurant.

31. The restaurant was full when Plaintiffs checked in. Plaintiffs told restaurant staff that they had a party of seven and needed a table that would be accessible for Mr. Nevarez and his wheelchair. They waited for about 20 minutes until a table in the back, rear corner of the restaurant

opened up. However, there was no direct, accessible path of travel wide enough for Mr. Nevarez to get to the back table easily. With difficulty, Mr. Nevarez, navigated around the perimeter of the restaurant to get to their table. It was unclear if the restaurant had any other tables accessible to wheelchair users. Paths of travel going through the restaurant did not appear to be wide enough for a wheelchair user like Mr. Nevarez, which dissuaded Plaintiffs from attempting to access the other areas of the restaurant including the bar, which is inaccessible to wheelchair users also.

32. After brunch, upon exiting to the parking lot, Mr. Nevarez encountered the same issues as before trying to get back to their truck from the restaurant.

33. After making a tee time reservation and reserving Corica Park's accessible golf cart for Mr. Nevarez, on August 26, 2020, Plaintiffs and their son went to Corica Park to golf with a friend.

34. They parked their van in a designated accessible parking space with faded paint near the cart barn area where the accessible golf cart is usually stored. Ms. Nevarez parked in a way to provide Mr. Nevarez, who was seated in the passenger seat, with as much space as possible to utilize the access aisle of the parking stall, but the parking stall had overgrown plants on the driver side which made it extremely difficult for her and their son to exit the van on the driver side.

35. Plaintiffs and their son did not see the accessible golf cart in the cart barn area, so they walked/rolled across the parking lot to the attendant booth for the driving range. The check-in window at the driving range was too high for Mr. Nevarez to access it, so Ms. Nevarez spoke to the employee there. She told the male employee that they were there to check in for a tee time and to use the accessible golf cart. The employee said he did not know anything about the accessible golf cart but that he would check. After several calls with other employees who were equally ignorant about where the accessible golf cart was located, the employee finally connected with someone who told him the accessible golf cart was at the Pro Shop.

36. Since Mr. Nevarez was already in his wheelchair, rather than reload into the van, he rolled over to the Pro Shop directly while Ms. Nevarez and her son drove the van over to the Pro Shop. Again, Mr. Nevarez experienced difficulty locating a safe place to exit the sidewalk from the driving

range. He was forced to roll through the parking lot to get to the Pro Shop and again encountered a cracked curb cut which was steep and had an uneven surface that was difficult for him to maneuver.

37. Plaintiffs did not see the accessible golf cart anywhere near the Pro Shop. "Brett" at the Pro Shop told Plaintiffs that the accessible cart was at the driving range. Frustrated, Plaintiffs told Brett that they were just there and that they were directed to come to the Pro Shop. Brett left to get the accessible cart, but when he arrived with it, it did not have the bag rack on it and was missing the knee brace, which is necessary for its use. Plaintiffs were forced to wait again while Corica Park employees brought the bag rack and knee brace to them.

38. Once in the accessible golf cart, Mr. Nevarez went to the driving range to warm up. He found a spot towards the end of the driving range in the teaching area. However, the golf ball dispenser that was closest to him was designated for instructor use only. Ms. Nevarez was forced to walk to the other end of the driving range to the booth to purchase balls for them.

39. After Plaintiffs, their son, and friend were done with their round of golf, Mr. Nevarez returned the accessible golf cart to the Pro Shop and transferred back into his wheelchair. Plaintiffs debated which way would be the safest route for Mr. Nevarez to exit and return to their van, as they noted on their way in that no matter which path they took to get to the Pro Shop and restaurant from the parking lot, there was no safe accessible path of travel, as the asphalt was severely cracked everywhere and would be difficult for Mr. Nevarez to travel over safely. No matter which way they exited, Mr. Nevarez would have to roll through the pavement full of cracks. An employee assured them that either route to the parking lot was "accessible."

40. Plaintiffs chose to exit via the side closer to the restaurant, since their van was parked closer to that side. Again, with extreme difficulty, Mr. Nevarez rolled down a cracked curb cut and maneuvered through the uneven and cracked asphalt parking lot with his wheelchair.

41. Plaintiffs allege continuous and ongoing discrimination. They want to – and plan to – golf at Corica Park and enjoy the restaurant there, and they are frustrated and anxious for the City to provide accessible facilities at Corica Park. Plaintiffs will continue to be injured by being deterred from

visiting Corica Park for all times occurring after the filing of this Complaint to the time of final judgment.

42. The barriers described above are only those that Plaintiffs encountered. They are presently unaware of other barriers which may in fact exist at Corica Park and relate to Mr. Nevarez's disabilities. The barriers to access described in this Complaint are listed without prejudice to Plaintiffs citing additional barriers to access after inspection by Plaintiffs' access consultant(s)/expert(s), per *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008) and *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011) (*en banc*). These barriers to access render Corica Park and its related premises inaccessible to and unusable by persons with mobility disabilities.

43. Plaintiffs' numerous complaints and claims to the City and Corica Park employees and representatives have been ignored or mishandled. Plaintiffs allege that it would be a futile gesture to provide further notices of violations relating to their continued, attempted visits and deterrence, which are certain to occur on a regular basis following the filing of this Complaint. Therefore, Plaintiffs will seek to supplement this Complaint at the time of trial as to subsequent events, according to proof.

44. The City knew, or should have known, that these policies, elements, and physical structures were inaccessible, violate state and federal law, and interfere with or deny access to the physically disabled. Moreover, upon information and belief, the City has the financial resources to remove these barriers and implement policy changes without much difficulty or expense and make its golf courses accessible to the physically disabled. To date, however, the City refuses to remove these barriers and make such changes.

45. As a result of the City's actions and failures to act, as a result of the failure to provide disabled access, and as a result of the City's intentional discrimination and deliberate indifference, Plaintiffs have suffered a denial of their civil rights, physical injury, psychological and emotional discomfort, pain and suffering, denial of rights to full and equal access to public facilities, and programmatic access, all to their general, special, and statutory damages. Mr. Nevarez has, on the occasion of each such denial of access, encountered barriers to full and equal access which have caused

him difficulty, discomfort, and embarrassment. Plaintiffs have been required to seek legal assistance, and seek statutory attorney fees, litigation expenses, and costs, pursuant to federal and state law.

46. TORT CLAIMS FILED – On or about April 16, 2020, Plaintiffs served claims on the City for all incidents described in this Complaint through February 9, 2020. In a letter dated May 26, 2020, the City rejected Plaintiffs' claims.

47. FORTHCOMING ADDITIONAL SET OF TORT CLAIMS – Plaintiffs intend to file additional claims with the City for events from February 9, 2020 to present. Plaintiffs acknowledge that these additional claims have not yet been served on the City, and thus, reserve the right to amend this Complaint accordingly, based on the City's response, if any.

48. Plaintiffs' goal in this suit is a positive one: to make the City's golf courses fully accessible to persons with mobility disabilities similar to Mr. Nevarez and their companions.

**FIRST CAUSE OF ACTION:
VIOLATION OF THE ADA, TITLE II
[42 USC §§ 12201 *et seq.*]
(As to Plaintiffs Abdul Nevarez and Priscilla Nevarez
against all Defendants)**

49. Plaintiffs replead and incorporate by reference, as if fully set forth hereafter, the allegations contained in all paragraphs of this Complaint and incorporate them herein as if separately repled.

50. Plaintiff Abdul Nevarez was at all times relevant herein a qualified individual with a disability as defined by the ADA who has reasonable grounds for believing he will be subjected to discrimination each time that he may attempt to use the subject facilities.

51. Plaintiff Priscilla Nevarez seeks relief pursuant to remedies set forth in 42 U.S.C. § 12203. She has been discriminated against in her attempts to assist Mr. Nevarez with accessing Corica Park. In addition, she has herself experienced discrimination as a result of being forced to assist Mr. Nevarez with physical access barriers that limit or deny access to the City's golf programs, services, activities and facilities, including but not limited to architectural barriers that limit access to Corica Park.

52. Public entity defendant City has failed in its responsibilities under Title II to provide its services, programs and activities in a full and equal manner to disabled persons as described herein, including without limitation failing to ensure that Corica Park and other golf courses owned, operated, and/or leased by the City are properly accessible to mobility disabled persons; failing to ensure that related public facilities and public accommodations, as described herein, are accessible to mobility disabled persons, including without limitation, abiding by applicable federal access standards for new construction and/or alterations of the subject facilities; failing to remove known architectural barriers at the subject facilities so as to make the facilities "accessible to and useable by" mobility disabled persons; and/or modify its programs, services and activities to make them accessible to mobility disabled persons, including Mr. Nevarez. As a proximate result of the City's actions and omissions, Plaintiffs were discriminated against in violation of Title II of the ADA and of the regulations adopted to implement the ADA. Plaintiffs suffered damages, compensable under Title II for intentional acts of the City, including deliberate indifference, and has suffered physical, mental and emotional damages, including difficulty, discomfort or embarrassment.

53. On information and belief, to the date of filing this Complaint, Corica Park continues to be inaccessible for safe and independent use by physically disabled persons such as Mr. Nevarez. Mr. Nevarez is unable, so long as such acts and omissions of the City continue, to achieve equal access to and use of Corica Park and cannot return to properly use and enjoy Corica Park until it made properly accessible to mobility disabled persons. Mr. Nevarez alleges that he intends to do so, once legally-required access has been provided. The acts of the City have proximately caused and will continue to cause irreparable injury to Plaintiffs if not enjoined by this Court.

54. Per § 12133 of the ADA, as a result of such discrimination, in violation of § 12132 of the ADA, Plaintiffs are entitled to the remedies, procedures and rights set forth in Section 505 of the Rehabilitation Act of 1973 (29 USC § 794a).

WHEREFORE, Plaintiffs request relief as outlined below.

## SECOND CAUSE OF ACTION:
## VIOLATION OF THE REHABILITATION ACT OF 1973
## [29 U.S.C. § 794]
**(As to Plaintiff Abdul Nevarez only against all Defendants)**

55. Plaintiffs replead and incorporate by reference, as if fully set forth again herein, the allegations contained in all paragraphs of this Complaint and incorporate them herein as if separately repled.

56. Upon information and belief, at all times relevant to this action, the City and Does 1-5 were recipients of federal funding within the meaning of the Rehabilitation Act of 1973. As recipients of federal funds, they are required to reasonably accommodate persons with disabilities in their facilities, programs, and activities.

57. Mr. Nevarez is a qualified individual with a disability as defined in the Rehabilitation Act of 1973. 29 U.S.C. § 705.

58. By its policies and practices of discriminating against and failing to reasonably accommodate patrons with mobility disabilities, the City violated Section 504 of the Rehabilitation Act of 1973. 29 U.S.C. § 794.

59. As a result of the City's discrimination and failure to provide reasonable accommodations, Mr. Nevarez and others with disabilities do not have equal access to the activities, programs, and services of the City's golf courses for which they are otherwise qualified.

60. Mr. Nevarez's injuries are ongoing so long as the City does not remove barriers, modify its policies and procedures, and provide fully accessible golf course facilities for him and other persons with similar mobility disabilities.

WHEREFORE, Plaintiffs requests relief as outlined below.

## THIRD CAUSE OF ACTION:
## VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 11135
**(As to Plaintiff Abdul Nevarez only against all Defendants)**

61. Plaintiffs replead and incorporate by reference, as if fully set forth again herein, the allegations contained in all paragraphs of this Complaint and incorporates them herein as if separately repled.

62. Upon information and belief, the City, the City's golf program, and Does 1-5 receive financial assistance from the State of California. Mr. Nevarez is a person with a disability within the meaning of California Government Code section 11135.

63. The City and its golf program denied Mr. Nevarez full access to the benefits of its programs and activities for which the City receives financial assistance from the State of California, and unlawfully subjected Mr. Nevarez and other persons with disabilities to discrimination within the meaning of California Government Code section 11135(a) based on their disabilities.

64. Mr. Nevarez's injuries are ongoing so long as the City and its golf program do not remove barriers, modify its policies and procedures ,and provide fully accessible golf course facilities for Mr. Nevarez and other persons with similar mobility disabilities.

WHEREFORE, Plaintiffs request relief as outlined below.

**FOURTH CAUSE OF ACTION:**
**VIOLATION OF UNRUH CIVIL RIGHTS ACT**
**[Cal. Civil Code §§ 51 *et seq.*]**
**(As to Plaintiffs Abdul Nevarez and Priscilla Nevarez**
**against all Defendants)**

65. Plaintiffs replead and incorporate by reference, as if fully set forth again herein, the allegations contained in all paragraphs of this Complaint and incorporate them herein by reference as if separately repled hereafter.

66. The City and its golf courses are business establishments within the meaning of the Unruh Civil Rights Act. The City is an owner and operator of a business establishment.

67. The City violated the Unruh Civil Rights Act by its acts and omissions, as follows:

    A. Failure to construct and/or alter Corica Park in compliance with state building code and state architectural requirements;

    B. Failure to remove known barriers to access at Corica Park;

    C. Failure to modify policies and procedures as necessary to ensure Plaintiffs full and equal access to the accommodations, advantages, facilities, privileges, and/or services of Corica Park; and

D. Violation of the ADA, a violation of which is a violation of the Unruh Civil Rights Act. Cal. Civil Code § 51(f).

68. Plaintiffs have experienced numerous barriers to access at Corica Park, all of which have caused them major difficulty, discomfort and embarrassment. Plaintiffs suffered physical, mental and emotional damages, including statutory and compensatory damages, according to proof.

69. Further, on information and belief, Corica Park and its respective premises are also illegally inaccessible in multiple other respects. As noted above, the barriers to access described in this Complaint are listed without prejudice to Plaintiffs citing additional barriers to access after inspection by Plaintiffs' access consultant(s)/expert(s), per *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034 (9th Cir. 2008) and *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011) (*en banc*).

70. These barriers to access render Corica Park and its premises inaccessible to and unusable by persons with mobility disabilities. All facilities must be brought into compliance with all applicable federal and state code requirements, according to proof. Plaintiffs pray leave to amend this Complaint, if necessary, to obtain full injunctive relief as to those barriers that limit or deny full and equal access to persons with similar mobility disabilities.

71. Each violation of the ADA constitutes a separate and distinct violation of California Civil Code § 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code § 52(a).

72. With respect to the City's violations of the Unruh Act that are not predicated on violations of the ADA, the City's behavior was intentional: it was aware of and/or was made aware of its duties to remove barriers that prevent persons with mobility disabilities like Mr. Nevarez's from obtaining full and equal access to Corica Park. The City's discriminatory practices and/or policies that deny full enjoyment of Corica Park to persons with physical disabilities indicates actual and implied malice and conscious disregard for the rights of Mr. Nevarez and other similarly disabled individuals. Plaintiffs complained on several occasions to the City and its representatives, to no avail. Accordingly, the City has engaged in willful affirmative misconduct in violating the Unruh Act.

73. On information and belief, the access features of Corica Park have not been improved since Plaintiffs' most recent visits there. Plaintiffs' injuries are ongoing so long as the City does not modify its policies and procedures and provide fully-accessible facilities for Plaintiffs and other persons with mobility disabilities similar to Mr. Nevarez's.

74. At all times herein mentioned, the City knew, or in the exercise of reasonable diligence should have known, that its barriers, policies and practices at its facilities violated disabled access requirements and standards and had a discriminatory impact upon Plaintiffs and upon other persons with mobility disabilities similar to Mr. Nevarez, but the City failed to rectify the violations, and presently continues a course of conduct in maintaining barriers that discriminate against Mr. Nevarez, similarly-situated disabled persons, and their companions.

WHEREFORE, Plaintiffs request relief as outlined below.

## PRAYER FOR RELIEF

1. Plaintiffs have no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiffs have suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the City as alleged herein, unless Plaintiffs are granted the relief they request. Plaintiffs and the City have an actual controversy and opposing legal positions as to the City's violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

2. Plaintiffs request a declaratory judgment that the City's actions, omissions, and failures -- including but limited to: failing to remove known architectural barriers at Corica Park so as to make the facilities "accessible to and useable by" mobility disabled persons; failing to construct and/or alter Corica Park (including parking and pedestrian paths of travel to/from parking) in compliance with federal access standards, state building code, and state architectural requirements; and failing to make reasonable modifications in policy and practice for Plaintiffs and other persons with similar mobility disabilities and their companions.

3. Plaintiffs request that the Court issue an order enjoining the City, its agents, officials, employees, and all persons and entities acting in concert with it:

 a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

 b. To provide reasonable accommodation for persons with disabilities in all its programs, services and activities at its golf courses;

 c. To ensure that persons with disabilities are not denied the benefits of, or participation in, programs, services, and activities at its golf courses;

 d. To modify the above-described facilities to provide full and equal access to persons with mobility disabilities;

 e. To remove all architectural barriers at Corica Park;

 f. To maintain such accessible facilities once they are provided;

 g. To train City employees and agents in how to accommodate the rights and needs of physically disabled persons at the City's golf courses;

 h. To implement nondiscriminating protocols, policies, and practices for accommodating persons with mobility disabilities at City golf courses.

4. Plaintiffs request that the Court retain jurisdiction over the City until the Court is satisfied that the City's unlawful policies, practices, acts and omissions, and maintenance of inaccessible public facilities as complained of herein no longer occur, and cannot recur;

5. Plaintiffs request all appropriate damages, including but not limited to statutory, compensatory, and treble damages in an amount within the jurisdiction of the Court, all according to proof;

6. Plaintiffs request all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by law, including but not limited to the ADA, 42 U.S.C. § 12205; the Unruh Civil Rights Act, California Civil Code § 52; and "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure § 1021.5.

7. Plaintiffs request prejudgment interest pursuant to California Civil Code § 3291;

8. Plaintiffs request interest on monetary awards as permitted by law; and

9. Plaintiffs request such other and further relief as this Court may deem just and proper.

Dated: November 24, 2020          PEIFFER WOLF CARR KANE & CONWAY, APLC

*/s/ Catherine Cabalo*
BY: Catherine Cabalo
Attorneys for Plaintiffs
Abdul Nevarez and Priscilla Nevarez

## DEMAND FOR JURY

Plaintiffs hereby demand a jury for all claims for which a jury is permitted.

Dated: November 24, 2020          PEIFFER WOLF CARR KANE & CONWAY, APLC

*/s/ Catherine Cabalo*
BY: Catherine Cabalo
Attorneys for Plaintiffs
Abdul Nevarez and Priscilla Nevarez